UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**GREGORY L. BARBER**

                Plaintiff,

                                                            **COMPLAINT**

      -against-

                                                           **JURY TRIAL**
                                                           **DEMANDED**

**HERSHA HOSPITALITY MANAGEMENT L.P. ,**
**AIDAN ROWE, AND DENISE RUBIN**

                Defendants.

-------------------------------------------------------------------X

      Plaintiff GREGORY L. BARBER upon personal knowledge and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

      1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, (as amended "Title VII") codified as 42 U.S.C.§ 2000e-et seq. New York State Human Rights Law, Executive Law § 290 et seq.; New York City Human Rights law, NYC Admin Code §8-101 et seq. for discrimination based on race, retaliation and hostile work environment.

      2.      In this action, Plaintiff, a former Controller for the Hilton Garden Inn JFK and Sheraton JFK hotels, seek damages, arising from Discrimination based on his race, retaliation and hostile work environment. Plaintiff worked for Defendant Hersha Hospitality Management ("HHM")for approximately 11 months.

**JURISDICTION AND VENUE**

3.     With respect to the federal claims asserted herein, the Courts jurisdiction is invoked pursuant to Title VII of the Civil Rights Act of 1964.

4.     Plaintiff filed the instant complaint within 90 days of receipt of the Notice of Right to Sue from the Equal Employment Opportunity Commission for violation of Plaintiffs federally protected rights. EEOC Charge Number 520-2015-01861.

5.     With respect to the State claims asserted herein, the Court supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a).

6.     The principal place of business for Defendant HHM is 132-26 South conduit Avenue, Jamaica New York 11430 and therefore Venue properly lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

**PLAINTIFF**

7.     Plaintiff Gregory Barber is a 39 year old black male, a resident of the United States and Queens County New York.  Plaintiff worked for Defendants for 11 months as a Controller for two of Defendant HHM's properties, the Hilton Garden Inn JFK and the Sheraton JFK Hotel.  Plaintiff suffered discrimination and retaliation solely because of his race and suffered injuries in violation of Title VII of the Civil Rights Act of 1964, NYS Human Rights Law and NYC Human Rights Law.

**DEFENDANTS**

8.     Hersha Hospitality Management L.P (HHM) is a foreign corporation authorized to conduct business under the laws of the state of New York.  HHM is subject to the provisions of

Title VII of the Civil Rights Act of 1964; NYS Human Rights Law and NYC Human Rights Law.  At all times relevant to this action, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, NYS Human Rights Law and NYC Human Rights Law.

9. Denise Rubin ("Rubin") is the General Manager of Hilton Garden Inn JFK hotel own and operated by HHM upon information and belief.  Rubin is caucasian female and was one of the Plaintiff's managers.  Rubin discriminated against Plaintiff because of his race, created a hostile working environment for Plaintiff and retaliated against Plaintiff for complaining about her disparate treatment of him in comparison to other employees that were similarly situated.

10. Aidan Rowe ("Rowe") is the General Manager of the Sheraton JFK hotel own and operated by HHM upon information and belief.  Rowe is a caucasian male and was one of the Plaintiff's managers.  Rowe discriminated against Plaintiff because of his race when he treated Plaintiff a black male differently than his white colleagues.

**FACTUAL ALLEGATIONS**

11. Plaintiff was hired on or about February 17, 2014 by HHM as the Controller for the Hilton Garden Inn JFK Hotel and Sheraton JFK Hotel ("The Properties").  Plaintiff's job duties were accounting for both properties. Plaintiff had a staff of four employees between the Properties who reported to him directly.  Plaintiff's four person staff were all ethnic minorities.

12. In June 2014, Plaintiff felt that he was being discriminated against by Rowe, General Manager of the Sheraton JFK Hotel.  Plaintiff job as the Controller of The Properties involved accounting for both properties.  Rowe disseminated an email with a schedule that

required the Plaintiff and other minority managers to perform "Lobby Duties". The duties included but were not limited to picking up trash in the parking lot, taking guest bags to their rooms, checking bathrooms to ensure that they were clean and ensuring that the trays from room service were removed from the hallways. When Plaintiff was hired as the Controller, he was not told that the lobby duties were part of his job description. These duties came about four months after Plaintiff was hired.

13. Plaintiff addressed his concerns with Rowe regarding these duties because he felt that he was assigned these duties in part to humiliate and degrade him because of his race. There were other managers who were minorities who also questioned the policy because the white managers were exempt. Plaintiff's white counterparts in both the marketing and sales department were exempt from performing the lobby duties. Plaintiff voiced his concerns and displeasure to both Rubin and Rowe regarding the lobby duties and how discriminatory he believed the assignment of those duties to be. Plaintiff questioned why his white colleagues in both the Marketing and Sales departments did not have to do those duties to no avail. Despite his protestations in voicing his displeasure with having to perform the lobby duties, Plaintiff performed them without fail.

14. There is a culture at The Properties where managers who are ethnic minorities are treated different from caucasian managers in a very discriminatory fashion. Minorities are often singled out for derogatory or racists comments by both Rubin and Rowe, and minorities are terminated at a higher rate than caucasians. The disparity in treatment favors white managers and employees in violation of both federal and state laws. Only black and minority managers were required to perform lobby duties while the white managers were exempted.

15.     Plaintiff witnessed Rubin making derogatory and racist remarks about employees who are minority.  Rubin made no secret of her racist and offensive views throughout the hotel. Plaintiff became concerned with the actions of Rubin based on an incident that occurred on July 24, 2014.  Plaintiff and a co-worker Larissa Harris had a friendly embrace in the form of a hug in the office.  For some unbeknown reason, Rubin was informed that the Plaintiff and Harris shared an embrace.  Rubin met with both Plaintiff and Harris to question them about the embrace. Rubin in her meeting with Harris asked her to file a sexual harassment complaint against Plaintiff.  Harris refused and even refused to write a statement because she indicated to Rubin that nothing happen.

16.     On or around October 2014, Plaintiff and his staff were successful in passing an internal audit of the accounting services.  This was the first successful audit in recent history at either Property.  Plaintiff was commended for his job on the audit but that was short lived.  On November 19, 2014 Plaintiff was put on a Performance Improvement Plan ("PIP") by Rubin despite having lead his staff to a successful audit. Plaintiff was confused about this action because it was not only unwarranted, it was clearly a retaliatory move by Rubin because of his challenge to Rowe and Rubin. Plaintiff requested a meeting with Human Resources and provided HR with a very detailed written summary of the issues with both General Managers, The Properties and the impact on the staff.  On November 20th, Plaintiff then met with the Regional Accounting Director Cheryl McGuckin.  McGuckin for the first time informed Plaintiff that she was dissatisfied with his work performance.  This came as a shock to Plaintiff because McGuckin had just praised him about the audit and had never addressed any dissatisfaction with his job performance.  .

17. On a November 21, 2014 conference call with Jake Basman, Cheryl McGuckin and Robert Arigo, Plaintiff again addressed the PIP and the issues with the General Managers Rowe and Rubin, their lack of leadership, their inability to perform their jobs, the low staff morale, their discriminatory behavior towards minorities, and what Plaintiff concluded as Rubin's attempts to have him terminated.

18. After the conference call, a representative from HR visited The Properties and interviewed Plaintiff the Controller, Sylon Porter Executive Chef, and Michelle Arthurs an Assistant General Manager. All three managers are black. HR never shared the results of their investigation with any of the interviewees nor did the HR representative have a follow up with any of employees interviewed.

19. The PIP required follow up in December 2014 and January 2015. Plaintiff super-seded the expectations of the PIP in the December follow up. However, there was no follow up on the PIP in January as Plaintiff was terminated on January 19, 2015 without any discussion about the PIP.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON RACE

20. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 19.

21. Defendants discriminated against Plaintiff because of his race in violation of Title VII of the Civil Rights Act of 1964, New York State and City Human Rights Law.

22. Plaintiff, a black male was hired as a Controller at Defendant HHM's properties. Throughout his 11 month tenure, Plaintiff was required to perform duties that were specifically designed for the black managers and excluded the white managers.

23. Plaintiff was required to perform lobby duties which included but were not limited to picking up trash in the parking lot, carrying baggage for guests, checking bathrooms to make sure they were clean, and walk to hallways to ensure that room service trays are removed. These duties were outlined in a memo from Rowe, General Manager of the Sheraton Properties.

24. In a meeting with Rubin, she explicitly told Plaintiff that he needs to be more attentive to picking up the trash in the parking lot. This was not just discriminatory, it was humiliating and derogatory. The managers in Marketing and Sales, both white, were not required to perform any of the described lobby duties and certainly they were not maintaining the parking lots by picking up trash.

25. The memo requiring the lobby duties were originally sent by Rowe for the Sheraton property, Rubin is the General Manager of the Hilton property. The fact that she made it her duty to address those duties with Plaintiff is a clear indication of the orchestrated discrimination and humiliation the Defendants subjected the Plaintiff and other minority employees to.

## SECOND CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT

26. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 25.

27. Defendants created a hostile work environment for Plaintiff because of his race in violation of Title VII of the Civil Rights Act of 1964 and NYS and City Human Rights Law.

28. On July 24th, Plaintiff embraced a fellow employee Larissa Harris in the surrounding area of Harris' office. Rubin was told of the embrace and sought to meet with Harris and Plaintiff. Rubin asked Plaintiff to write a statement as to what occurred. Rubin told Plaintiff that she wanted to protect him should any allegation be made in the future. However, the Plaintiff was aware of Rubin's mendacity as it is well known throughout the workspace. The Plaintiff informed Rubin that nothing happened and there was no need for a statement. Rubin then met with Harris and asked her about the embrace. Despite Harris' indication to Rubin that nothing happened, Rubin pressured Harris to say that something happened. During this meeting, Rubin spoke to Harris about Plaintiff in very derogatory terms. Rubin attempted to pressure Harris to file a sexual harassment complaint against Plaintiff. Harris refused and told her there was nothing to write a statement for or make a complaint.

29. Rubin yelled, made rude and derogatory comments to minority staff at all levels. She often threatened and intimidate the employees. It is well established that any employee who questions or challenges Rubin or Rowe would be terminated. Once Plaintiff questioned the lobby duties, both Rubin and Rowe became extremely rude and offensive. On one occasion, Rubin sent Plaintiff an offensive and rudely worded email. Plaintiff walked from his office to address Rubin regarding her disrespectful and offensive email to him.

28. On numerous occasions, Rubin under minded Plaintiff, usurped his authority in the accounting department and then tried to blame Plaintiff for any mishap that occurred as a result of her usurping Plaintiff's authority. Rubin was known to manufacture evidence against

[1]employees she dislikes in order to get them fired.  There is a significantly high turn over rate at the properties in part because of the actions of both Rubin and Rowe.  HHM does not seem to care.

29.     Rowe's approach to management was yelling and cursing or making very derogatory statements about the staff.  Rowe because of his inefficiencies and lack of leadership qualities required Plaintiff and other staff to work at a frenetic pace to accomplish whatever task he conjured up.  If the tasks were not completed or if there were computer glitches that caused a hold up in the completion of the tasks, Rowe would yell and curse at not only Plaintiff but lower level employees.  Both Rowe and Rubin created a hostile work environment because of their insecurities, their lack of leadership and because their discriminatory behavior went unchecked by HHM.  The Defendants conduct is a clear violation of both federal and state laws.

### THIRD CAUSE OF ACTION

### RETALIATION

30.     Plaintiff repeats and re-alleges all the allegations contained in paragraphs 1 through 29 .

31.     Defendant retaliated against Plaintiff for complaining about the discriminatory and humiliating treatment he suffered in violation of Title VII of the Civil Rights Act of 1964 and NYS and NYC Human Rights law.

---

[1] Rubin is referred to as the Monster by the staff because of her degrading, demeaning and racist conduct towards the minority employees.

32. Plaintiff questioned the discriminatory conduct of Defendants for requiring him to perform lobby duties while his colleagues who were white did not have to perform the same duties. As a result, Plaintiff requested a meeting with HR despite his fear that he could be retaliated against by both Rowe and Rubin because of their past conduct. Rubin retaliated against Plaintiff and Plaintiff was terminated.

33. After Rubin placed the Plaintiff on a PIP, Plaintiff sent a very detailed summary of the issues he had with both Rowe and Rubin and requested that the issues be addressed. The issues were discussed on a conference call that was held on November 21, 2014. The individuals on the conference call were Cheryl McGucking, Jake Bashman and Robert Ariago. The PIP was retaliatory because there were never any discussion or notice to Plaintiff that his job performance was not satisfactory, or that there were any concerns or issues with his job performance. The so called issues with Plaintiff's job performance only came about after he complained about his disparate treatment he experienced in comparison to his white co-workers. The PIP also came after Plaintiff and his team had successfully passed an internal audit, the first in recent history at The Properties. The PIP was a retaliatory tool used by Rubin in her ongoing quest to rid HHM of Plaintiff.

34. The retaliatory PIP required two follow ups for December 20, 2014 and January 19, 2015 to ensure that Plaintiff was in compliance. During the December follow up, Plaintiff had far exceeded the requirements of the PIP despite his feeling that it was punishment rather than a job performance issue. The second scheduled follow up on the PIP was set to take place on January 19, 2015. This follow up was supposed to determine if Plaintiff had addressed the issues of the PIP. On January 19, 2015, Plaintiff was summoned to a meeting where he is

summarily terminated without any discussion of the PIP. The PIP was clearly a rouse for Rubin to terminate Plaintiff even though there were no issues with his job performance.

35.     Plaintiff was discriminated against when the Defendants retaliated against him for questioning their discriminatory and humiliating policies towards black employees. HHM was and had been aware of the discriminatory conduct of Defendants Rowe and Rubin because they not only enabled such conduct they condoned it in violation of both federal and state laws.

### DEFENDANT'S CONDUCT WARRANT PUNITIVE DAMAGES

36.     Defendant's conduct warrants the imposition of punitive damages. The factors justifying punitive damages include but are not limited to:

a)      Defendants blatant discrimination against Plaintiff because of his race;

b)      Defendants creating a hostile working environment for Plaintiff;

c)      Defendants retaliation against Plaintiff by terminating his employment.

### PRAYER FOR RELEIF

WHEREFORE Plaintiff respectfully requests that this Court enter judgment against the Defendant as follows:

a) Actual, presumed and punitive damages in an amount to be specifically determined at trial;

b) All costs, disbursements, fees and interest as prescribed by New York CPLR;

c) Such other and additional remedies as the Court deems just and proper.

## JURY TRIAL

Plaintiff demand a jury trial for all causes of action and claims for which she has a right to a trial by jury.

Dated: October 8, 2015
       Queens, New York

                      LEWIS AUSTIN PC.

                BY:/s/_____
                      Rodney R. Austin, Esq.
                      102-27 183rd Place
                      Hollis, New York 11423
                      Tel: (646) 431-7736
                      Fax: (877) 586-7490

                      Attorneys for Plaintiff
                      Gregory Barber